J-S36037-16

2016 PA Super 128

| IN THE INTEREST OF: A.G.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  A.G.C. | |
| | No. 1324 MDA 2015 |

Appeal from the Dispositional Order May 26, 2015
In the Court of Common Pleas of Berks County
Juvenile Division at No(s): CP-06-JV-0000487-2014

BEFORE:  MUNDY, J., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                         **FILED JUNE 16, 2016**

A.G.C. (hereinafter "Juvenile") appeals the dispositional order entered in the Court of Common Pleas of Berks County by the Honorable Jeffrey K. Sprecher on May 26, 2015.   After a careful review, we affirm A.G.C.'s adjudication of delinquency.

The Honorable Scott E. Lash, who presided over the adjudicatory hearing, set forth the relevant facts and procedural history herein as follows:

> The Commonwealth charged Juvenile with violating 18 Pa.C.S.A., Section 3126 (a)(7), indecent assault with person less than 13 years of age, 18 Pa.C.S.A., Section 3126 (a) (8), indecent assault with person less than 16 years of age, and 18 Pa.C.S.A., Section 3127, (a) indecent exposure. This [c]ourt held an adjudicatory hearing on February 17, 2015. At the conclusion of the hearing, this [c]ourt found the Juvenile involved in the charge of indecent assault of person less than 13 years of age. The remaining two charges were dismissed. On May 27, 2015, the Juvenile was adjudicated delinquent and placed in a

*Former Justice specially assigned to the Superior Court.

residential facility. On June 3, 2015, the Juvenile filed a Post-Dispositional Motion, which was scheduled for a hearing on June 19, 2015. On July 31, 2015, the Juvenile filed a Notice of Appeal to the Superior Court from the order of Adjudication of Delinquency entered on May 26, 2015.

In his Concise Statement of Errors Complained Of On Appeal, the Juvenile raises one issue for this court's review:[1]

> The Court's finding that [Juvenile] was involved was so contrary to the weight of the evidence presented as to shock one's sense of justice, where the victim's testimony was not credible as the offenses were not reported until three to four months after they had allegedly occurred, the victim testified that she was in a relationship with [Juvenile] even though she never wanted to be, the victim testified that [Juvenile] came over [sic.] her house on several occasions when she did not want him to and yet the victim's mother testified that the victim had given permission for [Juvenile] to come over, the three separate times that the victim reported these offenses all vary considerably and get progressively worse and the victim admitted that she was angry with Appellant following a bad breakup.

The Commonwealth presented one witness at the hearing, the victim, M.C. M.C. testified she first met the Juvenile, age 16, on or about her twelfth birthday, November 14, 2013, when a friend introduced her to the Juvenile. She told him she was turning twelve that day. Before they separated, he asked her out multiple times but she declined.

Approximately three days later, she saw the Juvenile again, this time outside her school. He insisted on accompanying her to her home in the City of Reading. At his request, M.C. allowed him into her house. They sat in the living room for two hours and then he left.

The Juvenile returned to M.C.'s house every day for the next four to five days. Every time he visited, the Juvenile and M.C. sat on a couch in her living room with the T.V. on. During this time, the Juvenile asked to kiss M.C. and despite her refusals, they eventually kissed about ten times. Each time they

kissed, the Juvenile placed his hand under M.C.'s shirt and bra and touch her breasts with his bare hand. She also testified that he took her hand, held it over his pants and used it to rub his penis. On at least one occasion, the Juvenile tried to put his hands down M.C.'s pants and said he wanted to finger her. His hands got as far as the top of her panties but she stopped him before he could go further. The Juvenile also asked her for oral sex but she refused. On one occasion, the Juvenile exposed his penis to M.C., who told him to pull up his pants.

On their last day together, the Juvenile and M.C. went to a local park where he kissed her on the lips and touched her breasts. The final personal interaction between the Juvenile and M.C. occurred at her school at the close of the school year. The Juvenile approached M.C. in the hallway but he was chased away by a teacher.

Thereafter, the Juvenile texted M.C.'s iPod with a post from his Facebook page stating that he wanted to be friends again. In response, she said she wanted nothing to do with him. The Juvenile then posted derogatory remarks about M.C.

On cross[-]examination, M.C. admitted that she had a "bad breakup" with the Juvenile, that she was angry at him and that both sides sent inappropriate Facebook messages to each other. M.C. denied she told the Juvenile she was going to get back at him and further denied that she reported what had happened to her to stop the Juvenile from calling her names.

M.C. later reported the Juvenile's actions as described above to the Reading School District in March 2014, to a camp counselor in the summer of 2014, who in turn informed the Berks County children & Youth Services, and finally to a Kelsey Tothero in November 2014.

_____
[1] The Juvenile's second issue arises from the denial of his Post-Dispositional Motion by Senior Judge Arthur E. Grim. Senior Judge Grim will address that issue in a separate opinion.

Judge Lash Opinion, filed 10/15/15, at 1-4. Judge Lash ultimately concluded beyond a reasonable doubt that Juvenile had engaged in inappropriate contact with M.C. and found him involved in one act of indecent assault. He

further ordered that disposition be deferred to enable Juvenile to cooperate with a sexuality evaluation.

Following a dispositional hearing held on May 26, 2015, Judge Sprecher entered an Order adjudicating Juvenile delinquent in the instant case and a related one and ordered placement.[1]  Juvenile filed a timely Post-Dispositional Motion on June 3, 2015, wherein he raised three arguments. On June 23, 2015, a hearing was held before Judge Sprecher as to part three of Juvenile's Post-Dispositional Motion.  On July 20, 2015, a hearing was held before Judge Grim regarding the first two parts of the motion. Juvenile's Post-Dispositional Motion was denied in its entirety on July 20, 2015, and Juvenile filed a timely notice of appeal in both dockets on August 3, 2015.[2]

On August 11, 2015, Judge Sprecher entered an Order directing Juvenile to file a concise statement of the errors complained of on appeal

---

[1] Juvenile also had been charged at docket CP-06-JV-352-2014 with misdemeanor possession of a weapon on school property pursuant to 18 Pa.C.S.A. § 912(b); however, the recommendation for placement from the Juvenile Probation Office was based upon the results of the sexuality evaluation which indicated Juvenile was at a high risk to recidivate.

[2] In our Order of April 25, 2016, this Court quashed Juvenile's appeal filed in 1323 MDA 2015, upon discerning that he had filed two appeals to one dispositional order.  We further directed counsel to file either a proper petition for leave to withdraw as counsel and appropriate brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981) or an advocate's brief in 1324 MDA 2016. Counsel chose the latter and raises two issues therein.

pursuant to Pa.R.A.P. 1925, and he filed the same on August 28, 2015. On October 15, 2015, Judge Lash filed a Memorandum Opinion addressing Juvenile's challenge to the weight of the evidence presented at his hearing, and on October 20, 2015, Judge Grim authored his Memorandum Opinion pertaining to Juvenile's challenge to the denial of a pre-adjudicatory discovery request.[3]  In his brief, Juvenile presents the following questions for our review:

> [1] Whether the court abused its discretion and violated [Juvenile's] Federal and State constitutional rights for compulsory due process to obtain witnesses by the court['s] ultimately denying [Juvenile's] pretrial discovery request for disclosure of information regarding the camp counselor to whom the victim had reported the incident and/or in sustaining the Commonwealth's objection when [Juvenile] questioned the victim about the name of the camp counselor and therefor erred in denying [Juvenile's] post-dispositional request for a new adjudicatory hearing.
>
> [2]  The court's finding that [Juvenile] was involved was so contrary to the weight of the evidence presented as to shock one's sense of justice where the victim's testimony was not credible as the offenses were not reported until three to four months after they had allegedly occurred, the victim testified that she was in a relationship with [Juvenile] even though she never wanted to be, the victim testified that [Juvenile] came over to her house on several occasions when she did not want him to, and yet, the victim's mother testified that the victim had given permission to [Juvenile] to come over, the three separate times that the victim reported these offenses all vary considerably and get progressively worse and the victim admitted that she was angry with [juvenile] following a bad breakup.

---

[3] We refer to Judges Lash, Grim, and Sprecher both by name and generally as "the juvenile court" throughout this Opinion.

Brief for [Juvenile] at 5.

Generally, information sought during the pre-adjudicatory discovery and inspection process is governed by Pa.R.J.C.P. 340 (pertaining to informal, mandatory and discretionary pre-adjudicatory discovery).[4] Herein,

_____

[4] Relevant herein, Pa.R.J.C.P. 340(c) states:

> **C. Discretionary.** Upon motion of the attorney for the Commonwealth, the juvenile's attorney, or the juvenile, if unrepresented, for pre-adjudicatory discovery, the court may order, subject to the juvenile's right against self-incrimination, any discovery upon a showing that the evidence is material to the preparation of the case and that the request is reasonable.
>
> Comment: Under paragraph (C), the following are examples of evidence that may be material to the preparation of the case: 1) the names and contact information of eyewitnesses; 2) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses; 3) all written and recorded statements, and substantially verbatim oral statements, made by the juvenile, and by conspirators or accomplices, whether such individuals have been charged or not; and 4) any other evidence specifically identified, provided the requesting party can additionally establish that its disclosure would be in the interests of justice, including any information concerning any person involved in the case who has received either valuable consideration, or an oral or written promise or contract for valuable consideration, for information concerning the case, or for the production of any work describing the case, or for the right to depict the character of the person in connection with his or her involvement in the case.
>
> Any evidence or material requested cannot interfere with the juvenile's right against self-incrimination.

*** 

*(Footnote Continued Next Page)*

Juvenile initially contends the disclosure of the camp counselor's identity was required for impeachment purposes and in doing so relies both upon Pa.R.J.C.P. 340(c) and 23 Pa.C.S.A. § 6340(c), the latter of which provides that individuals who report cases of suspected child abuse are treated as confidential informants for purposes of prohibiting the disclosure of identifying information.[5]  Brief for [Juvenile] at 19-20. Juvenile contends he

_(Footnote Continued)_ ─────────────

> This rule is not intended to affect the admissibility of evidence that is discoverable under this rule or evidence that is the fruits of discovery, nor the standing of the juvenile to seek suppression of such evidence.
>
> ***
>
> It should also be noted that as to material which is discretionary with the court, or which is not enumerated in the rule, if such information contains exculpatory evidence as would come under the **_Brady_** rule, it is to be disclosed. Nothing in this rule is intended to limit in any way disclosure of evidence constitutionally required to be disclosed.[4]

Pa.R.J.C.P. 340 (c).

[5] Specifically, this Subsection states:

> **(c) Protecting identity.--**Except for reports under subsection (a)(9) and (10) and in response to a law enforcement official investigating allegations of false reports under 18 Pa.C.S. § 4906.1 (relating to false reports of child abuse), **the release of data by the department, county, institution, school, facility or agency or designated agent of the person in charge that would identify the person who made a report of suspected child abuse or who cooperated in a subsequent investigation is prohibited. Law enforcement officials shall treat all reporting sources as confidential informants.**

23 Pa.C.S.A. § 6340(c) (emphasis added).

had a constitutional right to obtain the name of all witnesses who would have testified in his favor and proceeds to engage in an analysis as to when the identity of a confidential informant must be disclosed in a criminal case, likening such a situation to the facts of the within matter. *Id*. at 17-22.

In doing so, Juvenile avers his request to compel the production of the identity of the camp counselor was material to his defense as M.C. told varying accounts of her interactions with Juvenile to three, different individuals over the span of a few months. *Id*. at 23. Juvenile maintains that as a result of the juvenile court's refusal to disclose this information, he was prevented from directly impeaching M.C.'s testimony pertaining to the camp counselor's report and to the number of times the alleged incident had occurred. *Id*. at 24. Juvenile maintains that "M.C. was the sole witness for the Commonwealth; consequently, M.C.'s credibility was of extreme importance. [Juvenile] does not contest the fact that he was given an opportunity to cross-examine M.C. as to the inconsistent reports[;] however, [Juvenile] was unable to inquire as to whether M.C. did in fact tell the camp counselor that the incident only happened on one occasion." *Id*. at 26.

Juvenile also stresses that on January 8, 2014, the juvenile court ordered that the camp counselor's identity be revealed to the parties, only to rescind that order later the same day after which it noted Juvenile's objection. *Id*. at 28 (citing N.T. hearing, 1/8/15, at 7). Juvenile further reasons that as a camp counselor is required to report suspected child abuse

pursuant to 23 Pa.C.S.A. § 6311, (defining adults who are mandated reporters of suspected child abuse), the disclosure of the counselor's identity herein would not hinder the flow of information. *Id*. at 30. Finally, Juvenile contends the juvenile court abused its discretion and deprived him of his due process rights in sustaining the Commonwealth's objection to questions posed to M.C. on cross-examination regarding the camp counselor's name. Juvenile reasons that his right to prepare his defense outweighed any desire to protect the flow of information and the camp counselor's identity. *Id*. at 32-33.

While both Juvenile and Judge Grim rely upon caselaw pertaining to when the identity of a confidential informant who was an eyewitnesses to a crime may be revealed, we find such an analysis inapplicable to the within matter wherein Juvenile sought the identity of a mandatory reporter of suspected sexual abuse for the purpose of impeaching M.C.'s testimony at his adjudicatory hearing. However, for the reasons that follow and upon consideration and application of Pa.R.J.C.P. 340(c) and 23 Pa. C.S.A. § 6340(c), *supra*, we find the juvenile court correctly denied Juvenile's request for disclosure of the identity of the camp counselor both during the pre-adjudicatory discovery request stage and at the adjudicatory hearing.

Our analysis is guided by the principles embodied in our Statutory Construction Act. *See* 1 Pa.C.S. 1921. Several sections are particularly relevant herein including Section 1921(a), which specifies that "[t]he object

of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly", and that "[e]very statute shall be construed, if possible, to give effect to all its provisions," 1 Pa.C.S. § 1921(a). In addition, Section 1921(b), further instructs: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit," *id.* § 1921(b).

Pa.R.J.C.P. 340(c)'s discussion of matters subject to discretionary, pre-adjudicatory discovery must be read along with 23 Pa.C.S.A. § 6340(c) which, as stated previously, unequivocally prohibits the release of identifying information that pertains to one who made a report of suspected child abuse or cooperated in a subsequent investigation thereof. While 23 Pa.C.S.A. § 6340(c) contains a statement that "[l]aw enforcement officials shall treat all reporting sources as confidential informants," the use of the term "confidential informant" when read in context is a direction to law enforcement to protect the identity of such mandatory reporters when preparing documents such as reports, complaints and affidavits.

Contrary to Juvenile's argument, the reference that reporting sources should be deemed confidential sources does not mandate that their identity is subject to disclosure as that of a confidential informant in a criminal case may be. The analysis behind a determination to reveal the identity of the latter, who has first-hand knowledge of a crime and often interacts with and engages in certain transactions with a suspect at the direction of and under

the supervision of law enforcement officials, is not analogous to the situation presented herein, nor is it in keeping with the spirit of Section 6340(c) which clearly is to prohibit the revelation of a mandatory reporter's identity in most circumstances.

Nor can we determine the identity of the camp counselor was producible under Pa.R.J.C.P. 340(c) as either material to the preparation of Juvenile's case or reasonable. The counselor was not an eyewitness to the contact between M.C. and Juvenile, nor was his or her testimony sought to be used as exculpatory evidence. Moreover, Juvenile entered into a stipulation on February 17, 2015, that the counselor's report was later reproduced in a separate document prepared by Berks County Children and Youth Services. The parties also stipulated that the report of suspected child abuse prepared by Children and Youth Services contained an account of the camp counselor's words and it was introduced into evidence at the hearing as Defendant's Exhibit 2. *Id*. at 4-5; Defense Exhibit 2. Counsel for Appellant further indicated that were she called to testify, the Children and Youth worker would indicate that the language in the report was taken *verbatim* from that which she was provided from the reporter. *Id*. at 4. Indeed, even without the camp counselor's testimony, Juvenile was able to impeach M.C. with regard to the statement she made to that individual.

M.C. testified on direct examination at the adjudicatory hearing that Juvenile kissed and groped her multiple times in her home during the week

of her twelfth birthday. N.T. hearing, 2/17/15, at 12-19. She also explained that on the last day they were together, the pair left M.C.'s home to go to a local park where Juvenile again kissed and fondled her. *Id*. at 19-20. On cross-examination, M.C. indicated that she reported Juvenile's actions to her camp counselor in the summer of 2014. *Id*. at 32-33. When questioned further regarding the inconsistencies in her testimony and the language contained the report, M.C. stated the report was inaccurate because she had told the camp counselor the kissing and fondling had occurred on multiple occasions, although she admitted the report indicated the touching happened only once. *Id*. at 33, 36. She also admitted she could not remember whether she ever reported that Juvenile had exposed his penis to her. *Id*. at 36-37.

To establish Juvenile had been involved in one count of indecent assault, the Commonwealth was required to prove the following beyond a reasonable doubt:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and the complainant is less than thirteen (13) years of age.

18 Pa.C.S.A. § 3126(a)(7). In his Opinion, Judge Grim, although analyzing the denial of the disclosure request under jurisprudence concerning the disclosure of confidential informants generally, stated the revelation of the

- 12 -

identity of the camp counselor was not crucial to Juvenile's case for his or her testimony would not have offered any evidence that would have exonerated Juvenile. Judge Grim stressed that it became clear at the adjudication hearing that M.C. provided differing accounts of her version of the events leading to the Juvenile's adjudication and that other charges brought against him were dismissed. Judge Grim Opinion, 10/20/15, at 4-5 (citing N.T. hearing, 2/17/15, at 32-39). Indeed, Juvenile ultimately was found to be involved in only one count of 18 Pa.C.S.A. § 3126(a)(7) despite M.C.'s conflicting reports of and testimony concerning several encounters with him. In light of the record herein, Juvenile failed to establish the identification and subsequent testimony of the camp counselor would have been exculpatory such that his or her absence at the hearing deprived him of his constitutional rights.

Juvenile next argues that his delinquency adjudication was contrary to the weight of the evidence. Specifically, Juvenile avers M.C.'s testimony was not credible because she waited three or four months following the contact before she reported Juvenile's behavior. Brief for [Juvenile] at 36. Juvenile states M.C.'s testimony that she did not want Juvenile to come to her home contradicted her mother's statements that she had given him permission to do so. *Id*. Juvenile also maintains M.C. provided a different and progressively more serious account of Juvenile's offenses each of the three

- 13 -

times she reported them. Finally, Juvenile stresses M.C. admitted she was angry with Juvenile following their "bad breakup." *Id*. at 16, 36.

"A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *In re J.B.,* 106 A.3d 76, 95 (Pa. 2014) (citation omitted). Thus, we may reverse the juvenile court's adjudication of delinquency only if it is so contrary to the evidence as to shock one's sense of justice. *In re J.M.,* 89 A.3d 688, 692 (Pa.Super. 2014), *appeal denied,* 102 A.3d 986 (Pa. 2014) (citation omitted). Moreover, where the juvenile court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. *Id.* Rather, this Court is limited to a consideration of whether the juvenile court palpably abused its discretion in ruling on the weight claim. *Id.* Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings, as conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve. *Id.*

In the matter *sub judice*, Judge Lash found the testimony of M.C. to be credible and in support of this finding stated the following:

> This [c]ourt concluded that M.C.'s testimony was credible. She appeared to have testified in a forthright manner. Although there were inconsistencies in her reporting of the Juvenile's behavior, particularly frequency of contact, for the most part,

- 14 -

the written statements and in-court testimony were consistent on the key facts: he kissed her, touched her breasts, and placed his hand down her pants. The discrepancies were not sufficient to create reasonable doubt. This [c]ourt thus concluded beyond a reasonable doubt that the Juvenile engaged in inappropriate conduct and found him involved in the act of indecent assault.

Judge Lash Opinion, filed 10/15/15, at 5.

Juvenile simply asks this Court to re-weigh the evidence and re-evaluate the juvenile court's credibility determinations, a task that is beyond our scope of review. Following our review of the entire record, we conclude the verdict is not so contrary to the evidence as to shock the conscience, and, thus, the juvenile court properly denied Appellant's weight of the evidence claim.

Dispositional Order Affirmed. [6]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2016

---

[6] "[I]t is established that we can affirm the trial court on any valid basis." *Commonwealth v. Kemp*, 961 A.2d 1247, 1254 (Pa.Super. 2008).