J-S57003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.M.,  A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1323 EDA 2018 |

Appeal from the Dispositional Order February 13, 2018
In the Court of Common Pleas of Carbon County
Criminal Division at No(s):  CP-13-JV-0000092-2016

BEFORE:   PANELLA, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J.                **FILED DECEMBER 14, 2018**

Appellant, A.M., appeals from the dispositional order entered in the Carbon County Court of Common Pleas, adjudicating him delinquent. We affirm.

The relevant facts and procedural history of this case are as follows. Appellant, 17 years old at the time of the incident, was driving down the road when Roy Stenger, a 64-year-old man walking with his girlfriend and grandchildren, yelled at him to slow down. Appellant took umbrage to this perceived slight, and stopped the car to argue with Mr. Stenger. Mr. Stenger told one of his granddaughters to take a picture of Appellant's license plate, but Appellant sped off before she could do so.

Moments later, Appellant returned. He ran up to Mr. Stenger and began pushing him. Mr. Stenger turned, and Appellant punched him in the face several times. Mr. Stenger fell, unconscious, on the pavement. He was

_____
* Retired Senior Judge assigned to the Superior Court.

bleeding from a head wound, and had broken a tooth. Appellant continued to strike Mr. Stenger until a neighbor intervened. Another neighbor called police, and Appellant fled. At the hospital, doctors discovered bleeding in Mr. Stenger's brain from the assault.

Appellant was charged with aggravated assault, simple assault, reckless endangerment of another person, harassment, and disorderly conduct. He proceeded to a dispositional hearing. The court found Appellant had committed each offense, save for disorderly conduct, and adjudicated Appellant delinquent. The court placed him on formal probation. Appellant filed a post-dispositional motion, raising several weight of the evidence claims. The court denied the motion, and Appellant timely filed a notice of appeal.

We do not review challenges to the weight of the evidence *de novo* on appeal. **See Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we only review the court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial, which here was the disposition hearing. **See id**.

"A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." **In re A.G.C.**, 142 A.3d 102, 109 (Pa. Super. 2016) (citation omitted). In evaluating weight of the evidence claims, the appellate court may not substitute its judgment based on a cold record for that of the juvenile court. **See In re R.N.**, 951 A.2d 363, 370-371 (Pa. Super.

- 2 -

2008). "Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings, as conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve." **A.G.C.**, 142 A.3d at 109 (citation omitted).

"[W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." **Commonwealth v. Davidson**, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

Here, Appellant filed a post-dispositional motion challenging several juvenile court findings as against the weight of the evidence. Thus, his claims are preserved for our review. **See R.N.**, 951 A.2d at 371. However, Appellant is due no relief, for the reasons set forth below.

Appellant first challenges the court's determination that he was not acting in self-defense when he struck Mr. Stenger. Appellant claims the testimony from the Commonwealth's five witnesses was inconsistent as to how the fight began. Appellant claims his own version of events is consistent with the statement his brother gave to police, and the court erred when it

failed to credit their version over that of the Commonwealth's witnesses. We disagree.

"The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). Once the issue of self-defense has been raised, the Commonwealth bears the burden of proving that a defendant's conduct was not justifiable self-defense. *See Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation omitted).

A court's assertion that a defendant's testimony is incredible does not relieve the Commonwealth of its burden. *See id*., at 788. "If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness." *Id*. (citation and internal quotations omitted).

At trial, the Commonwealth presented testimony from Mr. Stenger, his girlfriend, one of his granddaughters, and two neighbors who had witnessed the incident from their respective homes. Their testimonies indicated

Appellant was the aggressor. Four of the witnesses stated Appellant ran up to Mr. Stenger and pushed him to initiate the confrontation. Mr. Stenger, whose memory had faded in places due to the concussion he sustained from the attack, could not remember if Appellant had been shouting at him during the incident, a detail that four other witnesses recalled. Likewise, one of the neighbors who testified could not say precisely how many times Appellant punched Mr. Stenger, because she ran from her window in order to call police.

Though Appellant focuses on these minor inconsistencies in testimony, each witness confirmed Appellant was the aggressor. And, though Appellant contends Mr. Stenger was facing him and actually threw the first punch, he readily conceded in his testimony that he chose to drive back to his home, park his car, and chase Mr. Stenger down the block to continue the argument. *See* N.T., Hearing, 11/3/17, at 108.

The Commonwealth satisfied its burden of proving Appellant did not act in self-defense, by showing Appellant provoked the confrontation. Thus, under these circumstances, we find the juvenile court did not abuse its discretion in rejecting Appellant's weight of the evidence claim. Appellant is due no relief on this claim.

Appellant next challenges the juvenile court's finding that he had the necessary intent to commit aggravated assault as against the weight of the evidence.

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or

recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). The Pennsylvania Supreme Court has devised a totality of the circumstances test for courts tasked with determining whether a defendant intended to inflict serious bodily injury. *See Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006). The factors a court should consider include

> evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury.

*Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa. Super. 2013) (citation omitted). Even a single punch can support a conviction of aggravated assault, if the court finds a defendant acted with the requisite intent to inflict serious bodily injury. *See Commonwealth v. Burton*, 2 A.3d 598, 605 (Pa. Super. 2010).

Essentially, Appellant asks us to re-weigh the evidence and find that he did not intend to seriously injure Mr. Stenger. As support for this proposition, he again asserts the Commonwealth presented inconsistent testimony. Appellant cites to discrepancies in witness testimony regarding the number of times he struck Mr. Stenger. In Appellant's view, because the witnesses were not in agreement on the precise number of punches thrown, the juvenile court's determination that he possessed the intent to inflict serious bodily injury on Mr. Stenger was against the weight of the evidence. We disagree.

The Commonwealth supplied the following evidence to demonstrate Appellant's intent to injure Mr. Stenger: Appellant was 17 at the time of the incident, and several inches taller than 64-year-old Mr. Stenger; Appellant, unprompted, hit Mr. Stenger several times in the face and head with his closed fist; Mr. Stenger fell unconscious after the first punch, at which time Appellant continued to strike him; and Appellant only stopped hitting Mr. Stenger when a neighbor intervened. These factors clearly support the juvenile court's finding that Appellant had the requisite intent to inflict serious bodily injury.

As for the inconsistencies Appellant mentions, the Commonwealth's five eyewitnesses testified consistently that Appellant, unprovoked, punched Mr. Stenger. Three of the witnesses also testified that Mr. Stenger fell after Appellant struck him, and Appellant continued to hit him. Further, Appellant's *own testimony* at the hearing included an admission that he struck Mr. Stenger at least three times in the head with a closed fist. **See** N.T., Hearing, 11/3/17, at 100-103. And Appellant admitted Mr. Stenger did not hit him. **See id**. Thus, the juvenile court did not abuse its discretion in denying Appellant's weight of the evidence claim.

In Appellant's final issue, he challenges the court's finding that he requires treatment, rehabilitation, or supervision as against the weight of the evidence.

Juvenile courts have broad discretion in determining an appropriate disposition. **See In re C.A.G.**, 89 A.3d 704, 709 (Pa. Super. 2014). "[T]he Juvenile Act requires a juvenile court to find that a child has committed a

delinquent act *and* that the child is in need of treatment, supervision, or rehabilitation, before the court may enter an adjudication of delinquency." ***Commonwealth v. M.W.***, 39 A.3d 958, 964 (Pa. 2012) (emphasis in original).

> Once the juvenile court determines the Commonwealth has proved beyond a reasonable doubt that the child committed the acts alleged, the court must enter that finding on the record. If the juvenile court makes such a finding, next, either immediately or at a hearing held within 20 days, the court must hear evidence as to whether the child is in need of treatment, supervision, or rehabilitation. … If the court determines the juvenile is in need of treatment, supervision, or rehabilitation, the court shall enter an order adjudicating the juvenile delinquent and proceed in determining a proper disposition under Rule 512.

***In Interest of N.C.***, 171 A.3d 275, 280-281 (Pa. Super. 2017) (internal brackets, quotations, and citations omitted).

The burden lies with the Commonwealth to prove beyond a reasonable doubt that the juvenile is in need of treatment, supervision, or rehabilitation. ***See id***., at 283. While the commission of a delinquent act which would constitute a felony creates a presumption that the juvenile is in need of treatment and supervision, the court must make that finding after allowing for the introduction of other evidence. ***See M.W.***, 39 A.3d at 966, n.9.

Here, the Commonwealth presented testimony from Appellant's juvenile probation officer, who recommended Appellant be placed on formal probation. The officer explained that, despite Appellant's low risk of reoffending and his lack of prior arrests, the incident had serious and lasting effects on Mr. Stenger. ***See*** N.T., Hearing, 1/16/18, at 8. The officer advised that Appellant

needed treatment, supervision, and rehabilitation as he demonstrated a total lack of remorse for the incident. *See id*., at 9-12. The officer testified that Appellant indicated he was the victim in this situation. *See id*., at 11.

Mr. Stenger also testified about the lasting effects this incident had on him. *See id*., at 39. He told the court of lasting memory problems because of his head injury, as well as the continued emotional trauma and fear he feels while walking and driving around his own neighborhood. *See id*., at 39-43.

Appellant's psychologist testified in his defense. He emphasized that Appellant did not have any psychiatric history or reported mental health issues. *See* N.T., Hearing, 1/16/18, at 70-72. However, he stated that Appellant would benefit from counseling, and that Appellant has not accepted responsibility for his actions. *See id*., at 73. He echoed the probation officer's belief that Appellant believes himself to be the victim of this incident. *See id*., at 79.

Finally, Appellant testified. He stated that he does not need treatment or anything "that's going to make me struggle even more in my life." *Id*., at 101. He told the court, "I don't care about this situation." *Id*., at 103. He also accused Mr. Stenger of starting the confrontation. The juvenile court then concluded that Appellant was in need of treatment, supervision, and rehabilitation, and sentenced him to formal probation.

The court did not abuse its discretion in making that determination. Appellant's own testimony emphasizes his total lack of remorse and inability to understand the gravity of his actions. Therefore, we find the juvenile court

did not abuse its discretion in rejecting Appellant's weight of the evidence claim.

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/18