J-S18022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.A.-S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1650 MDA 2018 |

Appeal from the Dispositional Order Entered August 15, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-JV-0000547-2018

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED: JULY 22, 2019**

Appellant N.A.-S.S. appeals from the dispositional order entered after the juvenile court found he committed acts constituting rape, involuntary deviate sexual intercourse (IDSI), sexual assault, and indecent assault.[1] Appellant contends that the juvenile court erred in adjudicating him delinquent because the decision was not supported by sufficient evidence and the decision was against the weight of the evidence.  We affirm.

Appellant's adjudication arises from an incident that took place on July 18, 2017.  N.T. Hr'g, 7/16/18, at 4.  For the purpose of further background,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(a)(1), (2); 18 Pa.C.S. § 3123(a)(1), (2); 18 Pa.C.S. § 3124.1; and 18 Pa.C.S. § 3126(a)(1), (2), respectively.

we summarize the evidence presented at the adjudication hearing regarding the incident.[2]

Approximately one year prior to the incident in question, a mutual acquaintance gave the victim Appellant's name. N.T. Hr'g, 7/16/18, at 7. The victim contacted Appellant on Facebook, and the victim and Appellant communicated over Facebook Messenger. *Id.* at 8. Although the victim and Appellant exchanged their home addresses, they did not meet in person until July 18, 2017. *Id.* at 9.

On that day, Appellant appeared uninvited at the victim's home, where the victim lived with her mother, her mother's boyfriend, and her two brothers, C. and M. *Id.* at 9. The victim's mother was not home when Appellant first arrived. *Id.* at 10. The victim's mother's boyfriend answered the door, and Appellant asked if the victim was available. *Id.* at 9-10. When the victim realized Appellant was at her home, she, along with C., joined him on the porch. *Id.* at 10. The victim testified that she was on the porch with Appellant and C. for about thirty minutes. *Id.* at 11.

While on the porch, the victim's mother returned from the grocery store. *Id.* at 32. The victim's mother went to the kitchen, but continued to watch the victim and Appellant while they were on the porch. *Id.* Appellant asked to go to the victim's bedroom to have sex, and the victim replied, "No." *Id.* at 11. The victim explained that she "didn't see him like that" and that she

---

[2] Appellant did not testify at the adjudicatory hearing. N.T. Hr'g, 7/16/18, at 66.

"didn't want to do that." *Id.* at 11-12. Appellant continued pursuing the victim for another ten minutes. *Id.* at 12. Appellant then took her hand and led her to a shed, which was located in an alley in close proximity to her home. *Id.* at 15. C. remained on the porch.

The victim testified that when she and Appellant got to the shed, Appellant got "handsy" with her. *Id.* at 16. Appellant then pulled her sweatpants down and put his penis in her anus.[3] *Id.* at 17-18. The victim told Appellant "stop" and "no," but did not yell for help. *Id.* at 18, 34. The victim testified that her hands were placed on the shed and Appellant was pushed up against her. *Id.* at 18. Appellant then stopped and pushed the victim's head down to have her perform oral sex on him. *Id.* at 19. The victim complied, after which Appellant resumed having anal intercourse with the victim. *Id.*

The victim testified that M. approached the alley where the shed was located to call the victim home for dinner. *Id.* at 20. The assault ceased once M. approached the alley. *Id.* The victim testified that when Appellant stopped, she pulled up her sweatpants and went to the corner where M. was standing. *Id.*

Following the incident, the victim testified that she and M. walked back to the house. The victim told M. not to tell their mother about what he saw, and she did not report the incident herself. *Id.* at 21. When Appellant showed

---

[3] The victim testified that Appellant was wearing a "skirt," and that he "pulled down" his clothes before putting his penis in her. N.T. Hr'g, 7/16/18, at 17.

- 3 -

up to the victim's home a few days following the incident, the victim told her mother to tell Appellant that she was not home. *Id.* at 29. The victim testified that she was bleeding from her anus for about a week after the incident. *Id.* at 23. The victim "unfriended" and blocked Appellant on Facebook following the incident. *Id.* at 24.

In October 2017, the victim unblocked Appellant and contacted him via Facebook. *Id.* at 24. The victim confronted Appellant about the incident and asked him to admit his actions. *Id.* at 25. On November 9, 2017, the following text message exchange occurred among the victim, Appellant, and a third-party, N., which we reproduce verbatim from the Commonwealth's trial exhibit:

> N.: this is between us guys . . . might say this can't be worked out but trust me it can im friends wit ppl who had me at gun point at once . . . we have to push threw this.
>
> [The victim]: no im done wit this
>
>               \*     \*     \*
>
> [Appellant]: [to the victim] fr we gotta talk this out
>
> [The victim]: no
>
> [Appellant]: Please
>
>               \*     \*     \*
>
> [The victim]: why? So u can keep lyin
>
> [Appellant]: No. Because I want this behind us for good
>
> [The victim]: Nigga u raped me! How am i gonna do tht. u was close to me. i trusted you wit my life. n then u flipped on me. n did that!

- 4 -

[Appellant]: Ik ik. stop. I was wrong. Nd I never meant for it to go the way it did.

\* \* \*

[The victim]: then admit u did rape me. cuz uk u did.

[Appellant]: I don't wanna say tht I did. Bc I didnt want it to be tht

[The victim]: But u did do it. and it was tht

\* \* \*

[The victim]: so admit to it damn

[Appellant]: I just wanna put this behide us. Thats it. Nd get our bond back

[The victim]: admit to it

[Appellant]: Smh. Fine

[The victim]: say it

[Appellant]: I was wrong for what I did, im sorry on my grandma grave I am I never meant for it to go the way it did

[The victim]: no Say you raped me. say im sorry for rapin u I wanna put it behind us yada yada yada

[Appellant]: im sorry T. for rapin u nd doing what I did I never meant for it nd I wanna put it behide us for good.

\* \* \*

N.: i love yall. yall gud

[The victim]: love u 2. n no. im done wit him. have a good life

Commonwealth's Ex. 3. Appellant stated in another message, "I didn't rape you because I didn't punch on you or none of that, okay. I took control but not – I don't know. Oh, my God. I'm sorry, okay." N.T. Hr'g, 7/16/18, at 28.

M. also testified at the adjudication hearing. *Id.* at 45. M. stated that the first time that he saw Appellant was on the day of the incident, July 18,

- 5 -

2017. *Id.* at 46. M. saw Appellant on the front porch and in the alley with his sister. *Id.* at 46. M.'s mother told him to get his sister. *Id.* at 49. M. went to the alley where Appellant and his sister were located. *Id.* at 49. M. testified that he saw his sister and Appellant "standing there." *Id.* at 50. M. stated that his sister and Appellant were very close but he could not see what they were doing. *Id.* at 52. M. also testified that his sister walked ahead of him to their house, but they never spoke about what happened in the alley. *Id.* at 51. M. saw Appellant return to the porch to retrieve his bag before he left. *Id.* at 52.

The juvenile court deferred its ruling to July 26, 2018. *Id.* at 6. On July 26, 2018, the juvenile court found Appellant committed acts constituting rape, IDSI, sexual assault, and indecent assault. *Id.* at 6. Appellant appeared in court on August 15, 2018 for disposition. N.T. Hr'g, 8/15/18, at 1. The juvenile court ordered Appellant be placed on juvenile probation and to remain in shelter care at the York County Youth Development Center.

On August 27, 2018, Appellant timely filed a post-disposition motion, challenging the sufficiency and weight of the evidence.[4] The juvenile court denied the motion on September 24, 2018.

_____

[4] Pursuant to 1 Pa.C.S. § 1908, when computing time, the last day of any period will be omitted from the computation if it falls on a Saturday, Sunday, and/or holiday. So long as a post-disposition motion is timely, the appeal period is tolled and a juvenile has thirty days from the entry order disposing of the motion to file an appeal. Pa.R.J.C.P. 620(B).

On October 2, 2018, Appellant timely filed a notice of appeal. The juvenile court ordered Appellant to file and serve a Pa.R.A.P. 1925(b) statement within twenty-one days. Appellant filed a Rule 1925(b) statement on October 19, 2018. The juvenile court filed a statement relying on its July 26, 2018 opinion adjudicating Appellant delinquent.

Appellant raises two questions on appeal:

[1.] Whether the [juvenile] court, "err[ed] in adjudicating [Appellant] delinquent as said decision was not supported by sufficient evidence?"

[2.] Whether the [juvenile] court, "abus[ed] its discretion in finding that its decision entered in this matter was not against the weight of the evidence?"

Appellant's Brief at 5.

Appellant first argues that the adjudication was not supported by sufficient evidence. *Id.* Appellant claims that the juvenile court's finding that he forced the victim to perform sexual acts was based on "conjecture" and "speculation." *Id.* at 19, 22. In support, Appellant contends that the victim and M.'s testimonies contradicted each other. *Id.* at 20-21. Appellant emphasizes that the victim testified her pants were down when M. approached the alley, but that M. testified that he saw nothing inappropriate between the victim and Appellant. *Id.* at 21. Appellant alleges other inconsistencies, including the fact that M. did not corroborate the victim's testimony that she told M. not to tell their mother while walking back to the house. *Id.* Appellant concludes:

> In order . . . to find forcible compulsion, the Court must accept what [the victim] said under oath, discount the fact that her brother saw [the victim] and Appellant and saw nothing inappropriate which includes his sister with her pants down. A reasonable inference would be that Appellant would also have his pants down and M.[] did not testify to seeing this.

*Id.* at 21.

Moreover, Appellant asserts that the inculpatory statements he made in his messages to the victim should not have been considered against him. *Id.* at 21-22. Appellant argues that the victim forced him to say he raped her despite his innocence. *Id.* at 22.

The standard of review for a challenge to the sufficiency of evidence is well settled:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile]'s innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*In Interest of P.S.*, 158 A.3d 643, 650 (Pa. Super. 2017) (citation omitted), *appeal denied*, 174 A.3d 1029 (Pa. 2017). "[T]he uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Cramer*, 195 A.3d 594, 602 (Pa. Super. 2018) (citing *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005)).

Following our review of the record, and in light of our standard of review, we conclude that the juvenile court was entitled to credit the victim's testimony. *See Cramer*, 195 A.3d at 602. The victim's testimony was not mere conjecture or speculation. Furthermore, the juvenile court, as finder of fact, was entitled to resolve any discrepancy between the victim's and M.'s testimony by accepting all, part, or none of the evidence presented. *See P.S.*, 158 A.3d at 650. Lastly, Appellant's argument regarding his messages to the victim goes to the weight, not the sufficiency, of the evidence. Therefore, Appellant's claim merits no relief.

Appellant next challenges the weight of the evidence. Appellant's Brief at 5. Appellant emphasizes that M. did not testify to observing any sexual contact between Appellant and the victim. *Id.* at 23-24. Appellant also notes there was no physical evidence of a sexual assault, and the victim did not see a doctor or report the assault despite being in pain. *Id.* at 23.

Further, Appellant asserts that the victim's testimony regarding the events before she and Appellant went to the shed was implausible. *Id.* at 24-25. Appellant notes that the victim testified that she and Appellant discussed

sex while on the porch, with C. present. *Id.* Appellant contends that this testimony was unworthy of belief because no witness corroborated the nature of the conversation. *Id.* at 24-25. Additionally, Appellant asserts that the victim testified that her mother did not trust Appellant and watched the victim and Appellant while they were on the porch. *Id.* Based on this testimony, Appellant asserts that it would be reasonable to believe that the victim's mother would have stopped the victim from leaving the porch with Appellant or would have confronted the victim when she returned for dinner. *Id.* at 25.

Our standard of review is as follows:

> This Court applies the same standard for reviewing weight of the evidence claims in juvenile cases as those involving adults. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. "An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." Moreover, a court's denial of a motion for a new trial based upon a weight of the evidence claim is the least assailable of its rulings.

*In Interest of J.G.*, 145 A.3d 1179, 1187 (Pa. Super. 2016) (citations omitted).

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. Thus, we may reverse the juvenile court's adjudication of delinquency only if it is so contrary to the evidence as to shock one's sense of justice.

*In re A.G.C.*, 142 A.3d 102, 109 (Pa. Super. 2016) (citations and quotation marks omitted).

- 10 -

Following our review, we conclude that the juvenile court, as fact-finder, did not abuse its discretion in rejecting Appellant's weight of the evidence claim. *See J.G.*, 145 A.3d at 1187. The juvenile court was entitled to credit the victim's testimony. *See Castelhun*, 889 A.2d at 1234. Appellant's arguments highlight various discrepancies in the record and suggest that the juvenile court could have drawn inferences in his favor. However, those arguments do not establish that the adjudication of delinquency was so contrary to the evidence that it shocks one's sense of justice. *See A.G.C.*, 142 A.3d at 109. Accordingly, Appellant's claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/22/2019