J-S01008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE T. COX | : | |
| | : | |
| Appellant | : | No. 711 EDA 2018 |

Appeal from the Judgment of Sentence January 26, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-001172-2016,
CP-51-CR-001173-2016

BEFORE:   BOWES, J., KUNSELMAN, J., and STRASSBURGER, J.*

MEMORANDUM BY BOWES, J.:                **FILED MARCH 13, 2020**

Jermaine T. Cox appeals from the aggregate judgment of sentence of twenty-five to fifty years of imprisonment imposed at the above docket numbers[1] following his convictions for unlawful contact with a minor, indecent assault, indecent exposure, corruption of a minor, and endangering the welfare of children, relating to his sexual abuse of two of his nieces.  We affirm.

The trial court offered the following summary of the factual background of the cases:

---

[1] Appellant filed a single notice of appeal listing both lower-court docket numbers.  In **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), our Supreme Court held that separate notices of appeal must be filed at each docket for orders arising on more than one docket.  However, this appeal was filed on March 8, 2018, and **Walker**'s June 1, 2018 ruling was expressly only prospectively applicable.  Therefore, we need not quash this appeal.

* Retired Senior Judge assigned to the Superior Court.

**CP-51-CR-0001172-2016**

In 2011, when A.B. was seven years old, she spent the summer at her grandmother's house located in North Philadelphia. Other family members, including siblings, cousins, aunts, and uncles, also stayed at the house. At the time, [Appellant] was married to A.B.'s Aunt Zaynab. On one occasion, A.B. was in the bedroom shared by [Appellant] and Aunt Zaynab ("Aunt Zaynab's room"). While A.B. sat in a chair and watched television, [Appellant] touched her vagina, chest, and buttocks, both over and underneath her clothing. While doing so, he moved his hand in a circular motion. Another time, [Appellant] was playing with A.B. in Aunt Zaynab's room when he picked her up and tossed her on the bed. Over her clothing, [Appellant] touched A.B.'s vagina, again moving his hand in a circular motion. A separate incident took place while A.B. was watching television in Aunt Zaynab's room. [Appellant] entered the room wearing work clothes and pulled down his pants enough for A.B. to see his penis. On another occasion, A.B. was seated on the bed in Aunt Zaynab's room when [Appellant] placed his hand inside of her pants and moved his hand in a circular motion in the vaginal area. During these incidents, [Appellant] would tell A.B. not to tell anyone.

At some point, A.B. told her cousin H.B. (the victim in the second case) about the abuse. On October 3, 2015, A.B. disclosed the abuse to her stepfather. The following morning, she told her mother.

**CP-51-CR-0001173-2016**

H.B. also lived at her grandmother's house in 2011 with Aunt Zaynab, [Appellant], her siblings, and several uncles. A.B. and her brothers would also spend the night sometimes. When she was ten or eleven years old, H.B. was playing a computer game with [Appellant]. Aunt Zaynab was asleep on the bed. While H.B. was seated on his lap, [Appellant] began moving his thumb back and forth over her clothing in the vaginal area. He said to her, "You know I would never hurt you." At a different time, [Appellant] told H.B. "that her aunt's baby's father would put his sperm on H.B.'s lips and she wouldn't know what that is because she doesn't know what that tastes like." Either that night or the following, H.B. awoke to [Appellant] trying to put his penis back inside of his pants. She also felt "something wet" on her lips that tasted salty. When [Appellant] left the room, H.B. got up and

washed her face. A very similar incident occurred one night while H.B. slept in her grandmother's room. This time, H.B. saw [Appellant]'s hand moving back and forth over his penis and again felt the wet substance on her lips. H.B. told her grandmother that she "felt something on her lips" and that [Appellant] "was trying to put his thing back in his pants." H.B.'s grandmother directed her to tell Aunt Zaynab, which she did. However, Aunt Zaynab believed [Appellant] and said "he was playing and it was water."

Another incident occurred when H.B.'s grandmother asked her to retrieve medication from Aunt Zaynab's room. When H.B. knocked on the bedroom door, [Appellant] opened it wearing no clothing. H.B. told her grandmother about the experience. A few days later, [Appellant] asked H.B. "why she snitched." At a different time, H.B. was asleep in her room with A.B.'s older brother. Between 2:00 and 3:00 a.m., H.B. awoke to [Appellant] shining his phone flashlight over her. When she asked what he was doing, [Appellant] asked both H.B. and A.B.'s older brother if they wanted to play Wii.

H.B. asked A.B. whether she had similar experiences while staying at their grandmother's house. When A.B. stated that she had, H.B. told her to tell her mother. A.B. refused to do so because she was afraid. H.B. also shared the specific details of the abuse with her cousin K.J.

After the jury found [Appellant] guilty of the above offenses, this Court deferred sentencing for completion of a presentence investigation. On January 26, 2018, this court sentenced [Appellant] to an aggregate term of twenty-five to fifty years of incarceration. On February 5, 2018, [Appellant] filed a timely post-sentence motion seeking a new trial based on the weight of the evidence and reconsideration of the sentence imposed. On February 14, 2018, in response to [Appellant]'s post-sentence motion for reconsideration of sentence, this court conceded that it illegally sentenced [Appellant] by imposing the mandatory minimum of twenty-five to fifty years of incarceration on the two counts of corruption of minors. The sentence on the two counts of corruption of minors was vacated, and a new sentence of two to four years of incarceration to run concurrent to the other charges was imposed. All other claims raised in [Appellant]'s post-sentence motion were denied.

Trial Court Opinion, 5/17/19, at 1-4 (cleaned up).

Appellant filed a timely notice of appeal, and both he and the trial court complied with the dictates of Pa.R.A.P. 1925. Appellant presents one question for our review: "Were not the verdicts so contrary to the weight of the evidence as to shock one's sense of justice and should not a new trial be awarded?" Appellant's brief at 3.

The following principles apply to our review of Appellant's claim.

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013).

The trial court addressed Appellant's weight challenge as follows:

> A.B. and H.B. testified to a number of specific incidents in which Defendant performed sexual acts upon them. None of the offenses of which Defendant was convicted require[s] the recovery of "physical evidence." Both complainants provided detailed testimony about how Defendant touched them, where he touched them, and the location of the incidents of abuse. H.B. testified to sensory details, such as describing the substance on her lips as tasting salty. Both A.B. and H.B. were also able to recall specific comments made by Defendant to them.
>
> A.B. testified that she did not disclose the abuse to her mother earlier in time because her mother was "crazy when it came to her kids and A.B. did not want her mom to do anything bad."

H.B. testified that she disclosed the abuse to both her grandmother and Aunt Zaynab in 2011. She did not recall with certainty whether she had told her mother, but did not believe she had. She explained that her grandmother and Aunt Zaynab knew what was going on and did not do anything about it, therefore she did not expect her mother could help while living in Michigan. The jury weighed the evidence presented, evaluated the testimony of the witnesses, and found the complainants credible. The verdict was not against the weight of the evidence.

Trial Court Opinion, 5/17/19, at 5-6 (cleaned up).

Appellant acknowledges that the weight of the evidence is for the jury to decide, and that it is free to determine witnesses' credibility and to accept or reject evidence as it sees fit. Appellant's brief at 11. However, he argues that the inconsistencies in the testimony of the victims, and their answering "innumerable questions with 'I don't remember,'" was such that it "seriously called into question [their] credibility, and any verdict based upon such testimony was speculative and conjectural." *Id*. at 11-12. Appellant maintains that the implausibility of the acts occurring undetected in a house full of people, and the many inconsistencies in the testimony of the victims, renders it "abundantly clear that a reasonable doubt was raised as to whether the appellant committed the acts alleged." *Id*. at 11. Further, Appellant avers that the trial court omitted "crucial facts" in concluding that the verdict was not against the weight of the evidence. *Id*. at 12

Our review of the certified record reveals no indication that the trial court's assessment was the product of an error of law, was manifestly unreasonable, or was "a result of partiality, prejudice, bias or ill-will." *Clay*,

*supra* at 1055 (internal quotation marks omitted). As the Commonwealth aptly discusses in its brief, the victims remained consistent on "key facts pertaining to [Appellant's] abuse," and the jury, presented with the inconsistent details complained of by Appellant, was free to determine which version, if any, was credible. Commonwealth's brief at 13, 16-22. Indeed, our Supreme Court has confirmed that a conviction may properly rest upon a previously-relayed version of events even when the witness wholly recants in testifying at trial, where the jury has the opportunity to assess the credibility of the witness's explanations. *See Commonwealth v. Brown*, 52 A.3d 1139, 1171 (Pa. 2012) (holding verdict based upon out-of-court statements repudiated by the witnesses at trial did not render the verdict one of pure conjecture).

Accordingly, Appellant is entitled to no relief from this Court on his weight-of-the-evidence claim. *See*, *e.g.*, *In re A.G.C.*, 142 A.3d 102, 109 (Pa.Super. 2016) (holding juvenile adjudication was not against the weight of the evidence, despite inconsistencies in the victim's reporting of the abuse, where her statements were "consistent on the key facts"); *Commonwealth v. Jenkins*, 578 A.2d 960, 963 (Pa.Super. 1990) (denying relief on weight claim because the verdict was based upon the jury's credibility determinations, not "upon surmise or conjecture," although "there were contradictions and inconsistencies present in the [abuse victims'] testimony, and . . . both admitted to lying on occasion").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/20