J-S34023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THOMPSON GOTTLIEB SCHIEFELBEIN | : | |
| | : | No. 1481 WDA 2021 |
| Appellant | | |

Appeal from the Judgment of Sentence Entered December 18, 2020
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0002499-2018

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED:  December 7, 2022**

Thompson Gottlieb Schiefelbein (Appellant) appeals from the judgment of sentence imposed following his jury convictions of one count each of aggravated indecent assault - without consent, aggravated indecent assault by forcible compulsion, and indecent assault - without consent.[1]  We affirm.

In October 2018, then 17-year-old K.S. (Victim), who is autistic, sent nude photographs of herself to an eighteen-year-old female vocational and technical school (vo-tech) classmate.  N.T., 8/17/20, at 149, 163-73.  Without obtaining the Victim's permission, the classmate forwarded the photographs to Appellant, her ex-boyfriend.  ***Id.***

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3125(a)(1), (2), and 3126(a)(1).

On October 22, 2018, the Victim attended a meeting with her high-school principal Ryan Yates (Principal Yates), several school officials, and her mother to discuss the photographs. *Id.* at 68. The Victim disclosed that, on Friday, October 19, 2018, she arranged for Appellant to pick her up from school and take her home. *Id.* The Victim stated Appellant did not drive her home but instead drove her to his house. *Id.* at 69. Appellant took the Victim to his bedroom, took off his pants, grabbed her, and stated he wanted to have sex. *Id.* at 69, 72, 108. The Victim claimed she told him "no," ran from the residence, and waited for Appellant, who eventually drove her home. *Id.* at 69.

On October 23, 2018, however, the Victim notified Principal Yates she had not told him everything. *Id.* at 73. She stated when she and Appellant were in his bedroom, he took off his pants, grabbed her, pulled down her pants, and tried to have vaginal intercourse with her. *Id.* at 73-74. The Victim further said Appellant had choked her. *Id.* at 104. The Victim told Principal Yates there was a sanitary pad in her bathroom garbage can that she had used because she began bleeding after the assault. *Id.* at 42-43.

That same day, Sexual Assault Nurse Examiner Megan McLevey (Nurse McLevey) examined the Victim. Deposition Transcript, 7/30/20, at 30-31.[2] Nurse McLevey testified the Victim told her that during the assault, Appellant

_____

[2] Nurse McLevey's testimony was given by videotape deposition. The Commonwealth played it for the jury during trial. *See* N.T., 8/18/20, at 160.

had kissed her chest, took off her bra, and bit her nipple. *Id.* at 57. The Victim's mother gave Nurse McLevey the Victim's used sanitary pad as part of the exam. *Id.* at 63-64. The State Police Crime Lab tested the pad and found Appellant's DNA on it. N.T., 10/19/20, at 49-50.

On October 31, 2018, the police conducted a video-recorded interview with Appellant. *Id.* at 23-24, 27-31. Appellant initially denied to police that he knew the Victim. *Id.* at 27. However, when police indicated a school surveillance video showed Appellant picking the Victim up in his car, Appellant admitted this but claimed he drove her directly home. *Id.* at 27-28. Appellant later conceded that he did take the Victim to his house, hugged her and laid with her on a bed. *Id.* at 29-30. When questioned further, Appellant acknowledged he touched the Victim inappropriately over her clothing, and tried to have consensual sex with her but he could not insert his penis into the Victim's vagina. *Id.* at 30-31. Both Appellant and the Victim agreed they had exchanged sexually explicit texts, but the Victim said she had not planned on actually having sex with Appellant. *Id.* at 174-75.

A jury trial took place in August 2020. On August 24, 2020, the jury convicted Appellant of the above charges but acquitted him of two counts of rape by threat of forcible compulsion, and one count each of rape by forcible compulsion, involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault by threat of forcible compulsion, indecent assault

- 3 -

by threat, and strangulation.[3]   On December 10, 2020, the trial court sentenced Appellant to an aggregate term of 36 – 72 months in prison.

On December 15, 2020, Appellant filed a timely post-sentence motion, which included a request for appointment of new counsel, and for an extension of time to file supplemental post-sentence motions.  On December 18, 2020, the trial court issued an amended sentencing order, which did not advise Appellant of his appeal rights.  On December 18, 2020, the trial court granted Appellant an additional 30 days to file a supplemental post-sentence motion.

On January 19, 2021, new counsel filed a motion for another extension of time to file supplemental post-sentence motions.  The trial court granted the motion and gave counsel an additional 30 days to file supplemental post-sentence motions.  On February 2, 2021, the trial court granted Appellant an additional thirty days to file supplemental post-sentence motions upon his receipt of the trial transcripts.  The trial court docket demonstrates the transcripts were filed on February 19 and 23, 2021.  On March 17, 2021, the trial court entered an order giving Appellant credit for time served.  The order did not advise Appellant of his appeal rights.

_____

[3] 18 Pa.C.S.A. §§ 3121(a)(2), 3121(a)(2), 3123(a)(1), 3124.1, 3125(a)(2), 3126(a)(3), and 2718(a)(1).

On July 16, 2021, Appellant filed a supplemental post-sentence motion, which the trial court denied on November 9, 2021. The instant appeal followed.[4]

There is a timeliness issue with Appellant's filing of his notice of appeal. However, we view the events leading to the filing as constituting a breakdown in the court's process.[5] We therefore review the merits of Appellant's five issues:

1. Whether the Commonwealth presented sufficient evidence to prove the sexual offense for which the Appellant was convicted[?]

2. Whether the trial court erred in allowing the jury to hear testimony of the [V]ictim having been diagnosed with autism[?] …

---

[4] Appellant and the trial court complied with Pa.R.A.P. 1925.

[5] Generally, appellate courts cannot extend the time for filing an appeal. **See** Pa.R.A.P. 105(b). Accordingly, this Court, on January 7, 2022, issued a rule to show cause why the appeal should not be quashed as untimely. Appellant filed a response on January 25, 2022, arguing the delays were caused by the withdrawal of trial counsel, the appointment of new counsel, and the time needed for new counsel to obtain and review the trial transcripts. We discharged the rule to show cause on February 2, 2022, and directed the matter to the attention of the merits panel.

The record reflects the December 17, 2020, and March 17, 2021 orders amending Appellant's sentence and granting him credit for time-served did not advise Appellant about the timeliness requirement for his appeal, and that filing an untimely post-trial motion would not toll the appeal period. The court's failure to advise Appellant of his rights constitutes a breakdown in the court's processes. **See Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa. Super. 2007) (compiling cases in which the "courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court … either failed to advise Appellant of his … appellate rights or misadvised him"); Pa.R.A.P. 907.

3. Whether the [t]rial [c]ourt erred by not giving an immediate curative instruction to the jury to disregard the above-referenced testimony relating to the [V]ictim's autism diagnosis[?] …

4. Whether the [t]rial [c]ourt erred when it failed to allow the text messages, admitted as evidence during the trial, to be published to the jury upon the jury's request during their deliberations[?]

5. Whether the jury's verdict was against the weight of the evidence presented by the Commonwealth at trial[?]

Appellant's Brief at 3 (reordered).

In his first issue, Appellant contends the evidence was insufficient to sustain the verdicts. *Id.* at 12-15. Specifically, Appellant maintains the Commonwealth "failed to prove lack of consent beyond any reasonable doubt." *Id.* at 13.

When reviewing a sufficiency challenge, we determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. May*, 887 A.2d 750, 753 (Pa. 2005) (citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (citation omitted). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

- 6 -

Here, we are constrained to find Appellant waived his sufficiency claim. In Appellant's Pa.R.A.P. 1925(b) concise statement, Appellant claimed the Commonwealth failed "to present[] sufficient evidence to prove the elements of the sexual offenses charged." Concise Statement of Errors Complained of on Appeal, 12/29/21, at 2 (unnumbered). However, Appellant did not identify the element(s) of the crime(s) purportedly not proven by the Commonwealth's evidence.

"In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted). Where a 1925(b) statement "does not specify the allegedly unproven elements[,] … the sufficiency issue is waived [on appeal]." ***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008) (citation and emphasis omitted). Moreover, "[t]he Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that **the trial court judge may be able to identify the issues to be raised on appeal**[.]" ***Commonwealth v. Vurimindi***, 200 A.3d 1031, 1038 (Pa. Super. 2018) (emphasis added). "[A] Rule 1925(b) statement is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the party plans to raise on appeal." ***Id.***

Here, the trial court adopted its decision denying post-trial motions as its Rule 1925(a) opinion. *See* Order, 12/30/21, at 1 (unnumbered). While that opinion *generally* addressed the sufficiency of the evidence underlying Appellant's convictions, it did not discuss the claim now raised in Appellant's brief, namely, the Commonwealth failed to prove lack of consent. As Appellant's Rule 1925(b) statement failed to specify what elements of the offenses he was challenging and did not identify his challenge with sufficient specificity for the trial court to ascertain the nature of the challenge, Appellant waived his sufficiency of the evidence claim. *See Vurimindi*, *supra*; *Garland*, *supra*; *Williams*, *supra*.

Even if Appellant had preserved his sufficiency challenge, his claim would not merit relief. In his brief, Appellant concedes the Victim's trial testimony that Appellant had sexually assaulted her, and that the Victim made the same claims to the nurse who had conducted the sexual assault examination and to Principal Yates. Appellant's Brief at 13; N.T., 8/20/20, at 104-09; Deposition Transcript, 7/30/20, at 56-58; N.T., 8/17/20, at 73-74. Appellant argues, however, the jury should have disregarded this trial testimony, and should have credited the Victim's sexually-explicit texts as showing consent. Appellant's Brief at 14-15; N.T., 8/20/20, at 174-75.

It is settled that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005)

(citation omitted). Further, Appellant's claim that the jury should have discredited the Victim's trial testimony goes to the weight, not the sufficiency of the evidence. *See Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 160 (Pa. Super. 2007) (finding claim jury should not have believed victim's version of events goes to weight, not sufficiency of evidence). Thus, even if Appellant had not waived this claim, it would not merit relief.

In his second issue,[6] Appellant contends "the trial court erred in allowing the jury to hear testimony of the [V]ictim having been diagnosed with autism." Appellant's Brief at 9. Appellant maintains this was in contravention of the trial court's pre-trial ruling that no witnesses were allowed "to mention or make reference to the [Victim] having been diagnosed with autism." *Id.* Appellant claims the trial court erred by "not giving an immediate curative instruction to the jury to disregard the above-referenced testimony." *Id.* Appellant argues the record "clearly shows the jury improperly considered the [V]ictim's diagnosis as part of their deliberations in reaching a verdict." *Id.* We disagree.

The record is not clear about the circumstances under which the Victim's autism diagnosis came up; Appellant filed no written motions *in limine* to limit testimony regarding the Victim's autism diagnosis. Rather, our review discloses the topic arose during an off-the-record discussion prior to the start

---

[6] Appellant conflates his second and third issues in his brief. *See* Appellant's Brief at 9-11.

of trial. *See* N.T., 8/17/20, at 12. When the parties went on the record, they indicated the issue would arise during Principal Yates' testimony, the Victim's mother's testimony, and the Victim's testimony. *Id.* At that time, the trial court stated:

> I … want the testimony steered away from anybody testifying that she has an autism diagnosis. She has a specialized education plan [(IEP)] based upon the things [the Commonwealth] just said and that I think is acceptable.

*Id.* at 14. The trial court later clarified:

> As I said … we will see how the testimony develops. If at some point we get into … a medical dissertation or rendering of medical opinions or … something beyond what a principal and an educator would or could conclude based upon their observations and review of her IEP … **I would sustain an objection to that, so we will see how it unfolds.**

*Id.* at 16 (emphasis added).

> During Principal Yates' direct examination, the following occurred:
>
> A. [Principal Yates:] [The Victim] was a student in our life skills program, which typically, give or take, on any given year we have … anywhere from five to seven students … in our life skills program.
>
> So you kind of get to know those students pretty well just because it's always kind of a small group.
>
> Q. [The Commonwealth:] And what is the —
>
> A. When I say "pretty well", I just mean, like their needs and their schedules, who's their aides, thing[s] like that.
>
> Q. Can you tell us what the life skills program is?
>
> A. Well, it's a program … that serves … from the special education field the … students with more severe disabilities. In [the Victim's] case she is diagnosed with autism. She is —

THE COURT.  Do you have an objection?

[Defense Counsel:]  Objection, Judge.

THE COURT:  That would be sustained.

*Id.* at 57.  The Commonwealth then asked its next question.  Defense counsel did not request a curative instruction and did not move for a mistrial.

Later, during cross-examination, **defense counsel** sought to elicit information about whether the Victim needed assistance getting on and off the bus between the high school and the vo-tech school:

Q.  [Defense Counsel:] We'll keep it simple.  [The Victim] had an IEP plan; correct?

A.  [Principal Yates:] Yes.

Q.  Did that IEP plan have something in place to make sure that she got on the bus from [high school] to go to vo-tech?

A.   I'm not trying to be challenging with you, but that's a document, that, unless, Your Honor, you tell me to discuss it that's, that's a private document.

Q.  Well, sir —

A.  I mean, if I'm not allowed to say in the beginning about her autism I'm not thinking I should be discussing a student's IEP.

THE COURT:  Let's go to side bar, and I'll find out where you're going with this.

*Id.* at 93.  During the lengthy sidebar discussion, defense counsel complained about Principal Yates' second use of the term "autism" and stated if it continued, "I'm going to be forced to ask for a mistrial." *Id.* at 95; *see also id.* at 94-95.  However, defense counsel did not request a curative instruction

- 11 -

and did not move for a mistrial. *Id.* at 95. Principal Yates' cross-examination concluded without further incident. *Id.*

The next morning, prior to the testimony of the Victim's mother, the trial court revisited its ruling. N.T., 8/18/20, at 4-6. The trial court ruled the Victim's mother could testify about the Victim's "communication challenges" and "certain limitations that she has in being able to provide descriptions." *Id.* at 4. Defense counsel objected to any testimony that would go beyond the fact the Victim had a "special needs diagnosis." *Id.* at 5. However, the trial court ruled:

> That's fair. And certainly I'll entertain any objection [the defense wants] to place on the record in front of the jury, with the understanding that part of mom's testimony would be limited in the fashion [the Commonwealth] just described.

*Id.* at 6. Mother then proceeded to testify in accordance with the parameters set by the trial court; she never mentioned the word "autism" and defense counsel made no objections during her testimony. *See id.* at 10-75.

Later that day, the Commonwealth played the video deposition of Nurse McLevey, which took place prior to the trial court's ruling on the parameters of testimony regarding autism. At two points during her testimony, both in response to questions by the Commonwealth about why Nurse McLevey had the Victim's mother sign a consent form for the medical examination, Nurse McLevey stated her understanding that the Victim had been diagnosed with autism. Deposition Transcript, 7/30/20, at 35 and 37. Defense counsel did not object to the testimony at the time it was taken, or when it was played at

trial. *Id.* Moreover, defense counsel did not seek to redact those portions of the video deposition prior to it being played to the jury. N.T., 8/18/20, at 157-60.

In its direct examination, the Commonwealth asked the Victim if she had been diagnosed with autism; she replied, "Yes." N.T., 8/19/20, at 88. She then explained she had problems forming memories, and problems with times and dates, but was able to tell the jury what had happened to her. *Id.* at 88-89. Defense counsel did not object to this testimony.

During deliberations, the jury informed the court of its confusion[7] about whether a person with the Victim's disability was capable of consenting to sexual contact. N.T., 8/21/20, at 5. After a lengthy discussion with the trial court, the parties agreed to have the trial court reread the standard jury instructions for forcible compulsion and consent. *Id.* at 5-18, 26-29. The trial court then read the following instruction, which had been agreed to by the parties:

> Now, it should be clear to the jury that notwithstanding the reference that you may have heard in this case relating to autism and the IEP, those references do not mean that the [V]ictim cannot consent. **Those references do not mean that the [V]ictim cannot consent.**
>
> In this case and in all cases that relate to the question of consent you may consider … all the testimony you heard during the course of this trial to determine whether [the Victim] gave consent, and you must consider such factors as the [V]ictim's age and mentality.

---

[7] The text of the question is not contained in the notes of testimony.

*Id.* at 29 (emphasis added). As noted above, defense counsel participated in the drafting of this charge, and when asked if the trial court "missed anything[,]" defense counsel replied, "No, sir." *Id.* at 31.

To the extent Appellant challenges the adequacy of the trial court's response to alleged breaches of the trial court's ruling, *i.e.*, that the court did not give an immediate cautionary instruction or *sua sponte* declare a mistrial, the claim is waived. *See id.* It is well-settled that failure to lodge a contemporaneous objection results in waiver of a claim on appeal. *See Commonwealth v. May*, 887 A.2d 750, 758 (Pa. 2005) ("To the extent the claims would sound in trial court error, they are waived due to the absence of contemporaneous objections."); *Commonwealth v. Dougherty*, 860 A.2d 31, 37 (Pa. 2004) (failure to object results in appellate waiver); *Commonwealth v. Manley*, 985 A.2d 256, 267 n.8 (Pa. Super. 2009) (noting where defendant objects and trial court sustains objection, failure to request either curative instruction or mistrial constitutes waiver on appeal); *Commonwealth v. Bryant*, 462 A.2d 785, 788 (Pa. Super. 1983) (finding claim trial court erred in failing to give cautionary instruction waived where defendant did not request one).

As our recitation above demonstrates, Appellant made a single objection to the use of the term "autism," during Principal Yates' testimony, which the trial court sustained, and to which Appellant made no further objection. Thus, any claim regarding this issue is not before this Court; the trial court did not

adversely rule on Appellant's objection. *See Epstein v. Saul Ewing, LLP*, 7 A.3d 303, 314 (Pa. Super. 2010) (declining to address issue where trial ruling benefitted appellant).

Even if not waived, Appellant's claim does not merit relief. "It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision." *Commonwealth v. Kelly*, 797 A.2d 925, 936 (Pa. Super. 2002). Absent a motion by a defendant, a "trial judge may declare a mistrial [*sua sponte*] only for reasons of **manifest necessity**." Pa.R.Crim.P. 605(B) (emphasis added). Thus, a trial court exercises the power to declare a mistrial *sua sponte* "with the greatest caution, under urgent circumstances, and for very plain and obvious causes[.]" *Commonwealth v. Owens*, 445 A.2d 117, 120 (Pa. Super. 1982) (citations omitted).

The trial court's opinion does not address its failure to declare a mistrial *sua sponte*. Nevertheless, we conclude no error resulted. As the trial court tacitly acknowledged in its opinion, its initial decision that only a medical expert could testify about the Victim's autism diagnosis was not supported by law:

> [C]ase law suggests that lay testimony on a victim's mental disability is admissible in sexual assault cases. In *Com. v. Crosby*, "the victim's mother testified at length regarding her daughter's brain[-]injured status and limited mental capacity." 791 A.2d 366, 370 (Pa. Super. 2002). In *Com. v. Provenzano*, the fifteen-year-old victim's mental disability was established through "the testimony of the victim's 'life skills' teacher," who testified that "the victim had an IQ of 50 and the decision-making

capacity of an elementary school student." 50 A.3d 148, 152 (Pa. Super. 2012). In **Crosby** and **Provenzano**, the victim's mental disability was not merely a factor to be considered when determining consent or forcible compulsion but was an essential element of Indecent Assault under 18 Pa.C.S. § 3126(a)(6), which requires proof beyond a reasonable doubt that "the complainant suffers from a mental disability which renders complainant incapable of consent." No medical expert testified in either **Crosby** or **Provenzano**.

The mother in **Crosby** and the "life skills" teacher in **Provenzano** presented lay testimony on the victim's mental capacity based on their own knowledge and experience. Such testimony was not only admissible but was deemed competent to establish an essential element of a crime beyond a reasonable doubt. Here, [the Victim's] mother, her principal, and [the Victim] herself testified as to the limitations and challenges [the Victim] experienced as a result of her condition. That testimony was based on the witness's own experience with [the Victim's] condition and did not purport to be medical expert testimony. Nurse McLevey specified that her notation of [the Victim's] autism was merely based on the mother's report and not her own medical opinion. [Appellant] seems to argue not that these witnesses were incompetent to testify as to their own experiences with [the Victim's] condition, but rather that the word "autism" cannot be uttered by anyone but a doctor. **The [trial c]ourt sustained any objections [Appellant's] counsel made to explicit mentions of "autism,"** though [Appellant] allowed a few to pass without objection. **With or without objection, none of the mentions of autism were prejudicial because they were all made within the context of the witness's own personal knowledge and experience dealing with [the Victim].** That [the Victim] had been diagnosed with autism was a simple fact of life for these witnesses, and none of them testified about the effects of that diagnosis on [the Victim's] mental capacity in a manner beyond their own education or experience.

Evidence of [the Victim's] mental capacity was relevant, admissible, and appropriate for the jury's consideration. The victim's mental capacity is a relevant factor in determining essential elements of some of the crimes charged against [Appellant], including the element of lack of consent and the element of forcible compulsion. **See** Pennsylvania Suggested Standard Criminal Jury Instructions § 15.3126A ("When

- 16 -

considering consent, the age and mentality of the victim must be considered") and § 15.3121A (victim's mental condition is relevant to forcible compulsion).

Trial Court Opinion, 11/9/21, at 22-23 (emphases added). ***See also***, ***Commonwealth v. T.J.***, 2017 WL 2211388, at *2-3 (Pa. Super. May 19, 2017) (unpublished memorandum) (evidence sufficient to sustain charge of indecent assault of person with mental disability where victim's sister, nurse who conducted sexual assault exam, and investigating officer all testified victim was autistic and mentally challenged). The trial court's analysis is supported by the law; we discern no error or abuse of discretion.

Moreover, Appellant's reliance on this Court's decision in ***Commonwealth v. Padilla***, 923 A.2d 1189 (Pa. Super. 2007) is misplaced. ***Padilla*** does not concern the failure of a trial court to *sua sponte* declare a mistrial or lay testimony about a victim's mental health status. Instead, it concerns whether a defendant was entitled to a new trial when a Commonwealth witness violated the trial court's pre-trial ruling and testified the defendant had recently been released from prison. ***Padilla***, 923 A.2d at 1192. In that case, despite the defendant's filing, and the trial court's grant, of a motion *in limine* to preclude testimony about his prior incarceration, a police officer testified the defendant had "just got out jail[.]" ***Id.*** Defense counsel requested a mistrial, which the trial court initially granted. ***See id.*** at 1192-93. However, after an objection by the Commonwealth, the court changed its mind. ***Id.*** After requesting briefing by both parties, the court

- 17 -

ultimately instructed the jury "to disregard the remarks made by this witness at this particular time." *Id.* at 1193. In finding the trial court erred in not granting a mistrial, this Court relied on the following: (1) the trial court specifically precluded this testimony prior to trial; (2) it is settled law that evidence of past crimes is not admissible absent certain specific circumstances; and (3) the trial court's inadequate response, first by initially seeming to grant then denying defense counsel's motion for mistrial and by issuing a curative instruction that was "too vague to have cured the prejudice." *Id.* at 1194-96.

Here, as discussed, we are unable to determine from the record how the issue of the Victim's autism diagnosis arose and the trial court's ruling on the issue was less than absolute. As the trial court later acknowledged, to the extent it did rule lay witnesses could not refer to Victim's being diagnosed with autism, the ruling was not supported by case-law. Appellant largely failed to object, never requested a cautionary instruction, and never sought a mistrial. Thus, under the circumstances of this case, *Padilla* does not support Appellant's claim he was entitled to either a mistrial or the grant of new trial. Appellant's second issue is both waived, and even if not, does not merit relief.

In his third issue, Appellant appears to contend the trial court's instruction issued in response to the jury's inquiry regarding ability to consent was inadequate. *See* Appellant's Brief at 9-11. Appellant also implies the

trial court erred in failing to *sua sponte* declare a mistrial or grant a new trial because of juror misconduct. *Id.* Again, we are constrained to find waiver.

The standard governing our review of a challenge to jury instructions is as follows:

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Jones*, 954 A.2d 1194, 1198 (Pa. Super. 2008) (citation omitted).

This Court has stated:

> In order to preserve a claim that a jury instruction was erroneously given, the [a]ppellant must have objected to the charge at trial. *See Commonwealth v. Spotz*, 84 A.3d 294, 318 n.18 (Pa. 2014) (citations omitted); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). As our Supreme Court has explained:
>
> > The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the

- 19 -

> need for appellate review of an otherwise correctable issue.
>
> *Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220, 224 (Pa. 2005) (footnotes and citations omitted); *see Commonwealth v. Garang*, 9 A.3d 237, 244-245 (Pa. Super. 2010) (citations omitted); *Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted).

*Commonwealth v. Parker*, 104 A.3d 17, 29 (Pa. Super. 2014).

In *Parker*, trial counsel objected to the court's charge on flight at the charging conference. *Id.* However, counsel did not object to the charge when given and, when asked, did not propose any changes. *Id.* We held, because of this, the appellant had waived the issue on appeal. *Id.*

Here, Appellant challenges the charge issued in response to the jury's inquiry regarding ability to consent. However, Appellant assisted in drafting the answer to the jury's question, did not object to the answer, and did not take an exception. Thus, Appellant waived any challenge to the jury instruction. *Parker*, 104 A.3d at 29.

Appellant also claims he was entitled to a *sua sponte* declaration of a mistrial or a new trial based upon juror misconduct. Appellant complains "a juror conduct[ed] research outside of deliberations about the autism spectrum. … The record shows the [] juror … was permitted to remain on the jury despite his outside research." Appellant's Brief at 9. Appellant contends the conduct of this juror resulted in Appellant being "at a complete disadvantage." *Id.*

As this Court has explained,

- 20 -

the refusal of a new trial on grounds of alleged misconduct of a juror is largely within the discretion of the trial judge. When the facts surrounding the possible misconduct are in dispute, the trial judge should examine the various witnesses on the question, and his findings of fact will be sustained unless there is an abuse of discretion.

***Commonwealth v. Cosby***, 224 A.3d 372, 426 (Pa. Super. 2019) (internal quotation marks omitted), ***reversed on unrelated grounds***, 252 A.3d 1092 (Pa. 2021).

While "[t]he right to be judged by a fair and impartial jury of one's peers is, of course, firm and well-established," our Supreme Court has held "that not every act of juror misconduct warrants the declaration of a mistrial." ***Commonwealth v. Flor***, 998 A.2d 606, 639 (Pa. 2010) (citations omitted). Rather, "[o]nly when there has been prejudice to the accused does an act of juror misconduct require the granting of a new trial." ***Id.***

Our review shows no grounds for relief. Appellant bases his claim on the jury's inquiry, which included autism terminology that had not been used at trial. N.T., 8/21/20, at 7, 21-23. The trial court questioned the juror who had authored the note, in the presence of both counsel. ***Id.*** at 23-26. The juror testified that he conducted no outside research but had employment experience in mental health and related fields and his knowledge came out his "life experience." ***Id.*** at 24; ***see id.*** at 24-26. The trial court recognized the juror as a high-school classmate and **confirmed, based on its own personal knowledge, the juror had work experience in both mental-health and juvenile justice.** ***Id.*** at 24-25. Defense counsel accepted the

- 21 -

juror's explanation and requested removal of the juror or a mistrial. *Id.* at 25. Thus, Appellant's claim that juror misconduct mandated either the *sua sponte* declaration of a mistrial and/or a new trial is not supported in the record. Appellant's third issue is both waived and does not merit relief.

In his fourth issue, Appellant contends the trial court "erred when it failed to allow the text messages, submitted as evidence during the trial, to be published to the jury upon the jury's request during their deliberations." Appellant's Brief at 11; *see also id.* at 11-12. Again, we are constrained to find waiver.

"A trial court's decision as to which exhibits may be taken out with the jury is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *Commonwealth v. Hawkins*, 701 A.2d 492, 512 (Pa. 1997). Additionally, "the jury may take with it such exhibits as the trial judge deems proper" with the exception of trial transcripts, confessions, and the information or indictment. Pa.R.Crim.P. 646(A) & (C). The texts in question do not fall within the limitations set forth in Rule 646(C). Therefore, publication to the jury was purely within the discretion of the trial court. *Hawkins*, 701 A.2d at 512.

Here, the trial exhibits are not included in the certified record.[8]  Thus, we are reliant on the discussion in the trial transcripts.  The record reflects the jury asked to see "Defense Exhibit B and others."  N.T., 8/20/20, at 100.  The parties agreed Defense Exhibit B was a large "packet" of text messages, not all of which had been placed into evidence at trial; they also acknowledged the parties' previous agreement that Defense Exhibit B would not be sent out with the jury.  *See id.* at 100-03.  The Commonwealth was unable to recall which of the text messages it referred to during trial; defense counsel initially stated he knew which text messages he referenced at trial, but later admitted this was an approximation.  *Id.*  Defense counsel accepted that Defense Exhibit B could not be published to the jury in its entirety because it contained materials not used at trial.  *Id.* at 103.  Defense counsel stated that, if necessary, he could try to redact Defense Exhibit B but, contrary to counsel's averment on appeal, at no point did he inform the court that he had done so.  *Id.* at 101; Appellant's Brief at 12.  Defense counsel also pointed out that pictures of some of the text messages had gone out to the jury as part of another defense exhibit.  *Id.* at 104.

Ultimately, the trial court ruled that, given the difficulties discussed above, and the vague nature of the jury's request, it would not give the jury

---

[8] "Appellant has the duty to ensure that all documents essential to his case are included in the certified record." *Commonwealth v. Walker*, 878 A.2d 887, 888 (Pa. Super. 2005).

Defense Exhibit B. *Id.* at 104. However, the court cautioned, if the jury came back with a more specific request for some of the text messages, it would reconsider its ruling. *Id.* Defense counsel did not object to this ruling, did not take an exception and, in fact, stated: "Thanks, your Honor." *Id.* at 107. Thus, Appellant waived this claim. *See May*, 887 A.2d at 758; *Dougherty*, 860 A.2d at 37.

Moreover, even if not waived, this claim would not entitle Appellant to relief. At trial, the parties agreed the jury was not entitled to have the entire Defense Exhibit B. The parties also agreed that the exhibit was voluminous. Based on the representations made during the discussion, it is not clear that Defense Exhibit B could be easily redacted. The trial court informed the jury that it could make a "more specific" request, the court would revisit the issue. N.T., 8/20/20, at 108. The jury did not do so. Under these circumstances, we discern no abuse of the trial court's discretion in not publishing Defense Exhibit B to the jury. *See Hawkins*, 701 A.2d at 512. Appellant's fourth issue is both waived and does not merit relief.

In his fifth issue, Appellant contends the verdict is against the weight of the evidence. Appellant's Brief at 15-16. Appellant claims the

> highly prejudicial autism testimony, the lack of an immediate curative instruction, the absence of any physical evidence, the overwhelming evidence of consent shown through the text messages, a juror conducting research outside of deliberations about the autism spectrum, and the [t]rial [c]ourt's decision to not allow the jury to have the text messages in deliberations … tainted [the jury as a whole].

*Id.* at 16.[9]

"A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *In re A.G.C.*, 142 A.3d 102, 109 (Pa. Super. 2016) (citation omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth. v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination of whether the verdict is against the weight of the evidence.

*Id.* (citation omitted).

---

[9] To the extent Appellant also contends the verdict was against the weight of the evidence because the trial court dismissed a juror who discussed the case with a third party, *see* Appellant's Brief at 16; N.T., 8/21/20, at 31-56, he waived the claim because he did not raise it in his post-sentence motions. *See* Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Moreover, our review of the record discloses the position taken by counsel now, that this juror's presence tainted jury deliberations, directly contradicts counsel's statement at trial that, while the juror's actions were "noxious," counsel was not sure they rose to the level of dismissal and substitution of an alternate juror. N.T., 8/21/20, at 49. The record reflects, that, after an off-the-record discussion, the parties agreed to dismiss the juror and substitute the first alternate juror. *Id.* at 52-53. Defense counsel did not object or take an exception. *Id.*

The trial court addressed this claim in its opinion, citing relevant law and concluding the claim was meritless. **See** Trial Court Opinion, 11/9/21, at 21. The trial court's determination is supported by the evidence, and we discern no abuse of discretion or error. Accordingly, we adopt the trial court's analysis with regard to Appellant's fifth issue. **See id.**

For the reasons discussed above, Appellant's issues do not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2022